UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARITA HYMAN,

                            **Plaintiff,**

          v.                                          5:10-CV-613
                                                         (FJS/GHL)

**CORNELL UNIVERSITY and**
**DAVYYD GREENWOOD,**

                            **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**SCHWARTZ, LICHTEN & BRIGHT, PC**      **ARTHUR Z. SCHWARTZ, ESQ.**
275 Seventh Avenue
17th Floor
New York, New York 10001
Attorneys for Plaintiff

**OFFICE OF UNIVERSITY COUNSEL**        **NELSON E. ROTH, ESQ.**
Cornell University
300 CCC Building
Garden Avenue
Ithaca, New York 14853
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff brought this action pursuant to 20 U.S.C. § 1681 *et seq.*, also known as Title IX of the Educational Amendments of 1972, as well as Section 296(7) of the New York Executive Law (the New York State Human Rights Law) and Section 40-c of the New York State Civil Rights Law. Currently before the Court are Defendants' motion to dismiss and Plaintiff's motion to amend her

complaint, as well as Plaintiff's counsel's motion to withdraw as attorney.

## II. BACKGROUND

This case arises from a series of emails sent between Plaintiff, then a graduate student in Cornell University's Department of Anthropology (the "Department"), and Defendant Greenwood, a senior faculty member in the Department. Plaintiff entered Cornell during the Fall 2002 semester to pursue a doctoral degree in education; and, in the Spring 2004 semester, she applied to switch to the Department of Anthropology. *See* Complaint at ¶¶ 7, 9. Plaintiff approached Defendant Greenwood regarding her application, and he agreed to support it. *See id*. at ¶¶ 10-11. However, the Admissions Committee rejected Plaintiff's application. *See id*. at ¶ 12. Defendant Greenwood expressed surprise at this decision and encouraged Plaintiff to reapply to the Department for the following academic year and volunteered to help her in this endeavor. *See id*. at ¶ 13. To this end, Defendant Greenwood prepared a letter of support on Plaintiff's behalf, which two other faculty members signed, and emailed it to her at 12:08 am on April 27, 2004. *See* Complaint at ¶ 15. In May of 2004, the Department admitted Plaintiff. *See id*. at ¶ 16.

Plaintiff and Defendant Greenwood maintained email contact during and after Plaintiff's transfer admission process. *See* Complaint at ¶ 17. However, during the spring and summer of 2004, Plaintiff sent Defendant Greenwood a series of emails which he found to be inappropriate. On May 1, 2004, with her admission to the Department already secured, Plaintiff sent Defendant Greenwood a message which began with Plaintiff's wondering about "how best to approach this next phase of our relationship," *see* Article 78 Record on Appeal ("Art. 78 Rec.") at 80, and included an ambiguous discussion about love, in which Plaintiff indicated that it is "powerful . . . for

productive work," *see id*. at 82.  On July 15, 2004, Plaintiff emailed a message to Defendant Greenwood that contained a discussion of Plaintiff's relationship with her husband, with references to their sexual relationship, and Plaintiff's feelings about the choices she makes with her body.  *See id*. at 108.  The following day, Defendant Greenwood stated his intent to cease communication with Plaintiff and his encouragement that Plaintiff "mov[e] on with life."  *See* Complaint at ¶ 22.

On November 1, 2004, Defendant Greenwood emailed Plaintiff and demanded that she not contact him again, including a no-contact agreement within the body of his email.  *See* Complaint at ¶ 34.  Plaintiff responded, expressing her agreement not to contact him.  *See id*. at ¶ 37.

On or about November 23, 2006, Plaintiff responded to a campus-wide email from Cornell University President David Skorton which asked for input on his review of the Cornell Code of Conduct.  *See* Complaint at ¶ 40.  Plaintiff protested the treatment she received within the Department, stating that faculty members had repeatedly violated her rights under the Code.  *See id*.  Plaintiff copied Defendant Greenwood on the email to President Skorton.  *See id*. at ¶ 40.

The day after Plaintiff copied Defendant Greenwood on her email to President Skorton, Defendant Greenwood emailed Plaintiff's Dean to complain that Plaintiff had violated their no-contact agreement.  *See* Complaint at ¶ 41.  Defendant Greenwood contacted the Office of Workforce Diversity, Equity and Life Quality ("OWDELQ") and described Plaintiff's alleged inappropriate behavior and her breach of the agreement.  *See id*. at ¶ 42.  On December 1, 2006, Defendant Greenwood submitted a report to Mary Grant of Cornell's Office of the Judicial Administrator ("JA").  *See id*. at ¶ 43.  On December 12, 2006, JA Grant informed Plaintiff that Defendant Greenwood had filed a complaint against her.  *See id*. at ¶ 44.

On March 23, 2006, JA Grant contacted Defendant Greenwood to follow up on their

previous communication regarding Plaintiff and to determine if Plaintiff had contacted Defendant Greenwood in the meantime. *See* Art. 78 Rec. at 780-81. In his reply to JA Grant, Defendant Greenwood expressed surprise that she had followed up with him regarding Plaintiff's behavior. *See* Complaint at ¶ 47. Defendant Greenwood emailed JA Grant on April 16, 2007, and clarified that he had not yet filed a formal complaint against Plaintiff and that he considered any complaints that Plaintiff filed to be additional harassment. *See* Art. 78 Rec. at 783.

On April 17, 2006, Plaintiff filed a formal complaint with OWDELQ, alleging that Defendant Greenwood had violated Cornell's sexual harassment policy in relation to his conduct toward her. *See* Complaint at ¶ 46. On May 4, 2007, JA Grant emailed Plaintiff to inform Plaintiff that she had been mistaken in her December 12, 2006 email and that Defendant Greenwood had only made an inquiry to seek advice and had not filed a complaint. *See id*. at ¶ 49.

On May 25, 2007, Defendant Greenwood filed a formal complaint. *See* Complaint at ¶ 50. On September 18, 2007, the University Hearing Board met to discuss Defendant Greenwood's complaint against Plaintiff. *See id*. at ¶ 12. The panel ultimately found that Plaintiff's decision to cc Defendant Greenwood on her email to President Skorton was made with the intent to harass him and that Plaintiff violated the Code of Conduct when she sent it to Defendant Greenwood in breach of their no-contact agreement. *See id*. at ¶ 53. The panel imposed a punishment of a further no-contact order and a letter of reprimand. *See id*. The University Review Board later denied Plaintiff's appeal of this decision. *See id*. at ¶ 63.

On December 11, 2007, the Cornell University Division of Human Resources released an investigative report regarding Plaintiff's complaint that Defendant Greenwood's behavior toward her violated Policy 6.4, the University policy prohibiting discrimination, harassment, and bias. *See*

Complaint at ¶ 64. The report concluded that Plaintiff's complaint was "fundamentally frivolous" and determined that Defendant Greenwood did not violate Policy 6.4. *See id*. On January 7, 2007, Plaintiff appealed the Division of Human Resources' decision to Dean Peter Lepage of the College of Arts and Sciences, and Dean Lepage informed Plaintiff that he had accepted the Division of Human Resources' conclusions, denied her appeal, and stated that he would take no further action in the matter. *See id*. at ¶¶ 65-66  Plaintiff states that she has exhausted all remedies for which the university policy provides. *See id*. at ¶ 67.

### III. DISCUSSION

A.   **Defendants' motion to dismiss**

   *1. Rule 12(b)(6) standard*

Courts use a two-step inquiry when deciding a 12(b)(6) motion. First, they isolate the moving party's legal conclusions from its factual allegations. Second, they presume the factual allegations to be true and examine them for plausibility. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

To survive a 12(b)(6) motion to dismiss, a pleading must contain more than a "blanket assertion[] of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Rather, *Twombly* added a requirement that a pleading show plausible grounds for relief to the requirement of Federal Rule of Civil Procedure 8(a)(2) that a pleading "'sho[w] that the pleader is entitled to relief.'" *Id*. at 557 (quotation omitted). The Court again explained this standard in *Iqbal*, where it established that, to withstand a motion to dismiss, a pleading must be "plausible on its face" such that it contains "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

When deciding a 12(b)(6) motion, a court may "consider documents attached to or incorporated by reference in [a] complaint[.]" *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (citation omitted). Even where "'a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may . . . take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quotation omitted).

Here, the Court considered Plaintiff's original complaint and the email communications that Plaintiff's original complaint incorporated by reference. These emails appeared in the record on appeal of the Article 78 proceeding that involved these same facts. Plaintiff annexed the record on appeal to her response to Defendants' motion to dismiss.

### 2. Title IX claim

Title IX prohibits educational institutions from "[s]ubject[ing] any person to separate or different rules of behavior, sanctions or other treatment [on the basis of gender]." 45 C.F.R. § 86.31(b)(4) (2010). Although the Title IX definition of discrimination "encompass[es] teacher-on-student hostile educational environment sexual harassment[,]" *see Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003) (citing *Franklin [v. Gwinnett Cnty. Pub. Sch.]*, 503 U.S. [60,] 75, 112 S. Ct. 1028 [(1992)]), an institution "cannot be held liable for harassment by teachers or students short of the school's actual knowledge of, and deliberate indifference to, the harassment[,]" *id.* at 750 n. 11. Deliberate indifference exists where "'the defendant's response to known

discrimination "is clearly unreasonable in light of the known circumstances"'" and where "remedial action only follows after 'a lengthy and unjustified delay[.]'" *Id*. at 751 (quoting *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999); *Bruneau v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 761(2d Cir. 1998)).

In Plaintiff's Title IX claim, she alleges that Defendant Cornell wrongly found that she had committed an infraction under the University Code of Conduct and that Defendant Cornell selectively enforced its Code of Conduct policy based on gender. *See Curto v. Smith*, 248 F. Supp. 2d 132, 146 (N.D.N.Y. 2003) (citing *Yusuf* [*v. Vassar College*,] 35 F.3d 709[, 715 (2d Cir. 1994)]). To maintain such a claim, a plaintiff must cite particularized evidence to allege a causal connection between gender bias and the allegedly flawed outcome. *See id*. Here, Plaintiff claims that Defendant Cornell acted with deliberate indifference when it did not respond to Plaintiff's email to President Skorton in which she described Defendant Greenwood's alleged harassment of her. *See* Plaintiff's Opposition Brief at 11-12, 31-32.

Plaintiff's theory as alleged finds no support in fact or law. First, Plaintiff's email to President Skorton did not comply with Defendant Cornell's published instructions regarding filing a complaint against a faculty member. *See* Art. 78 Rec. at 176. It is therefore not reasonable to expect that Defendant Cornell would respond to that statement. Furthermore, Plaintiff does not allege that, when she did file a formal complaint with the OWDELQ on April 17, 2007, in accordance with University policy, Defendant Cornell ignored her complaint. Second, Plaintiff did not allege a causal connection between her gender and the allegedly flawed response to her improperly filed complaint. Plaintiff alleged that Defendant Cornell ignored her, but she did not, as the law requires, allege facts to indicate that Defendant Cornell ignored her *because she is a woman*.

At oral argument, Plaintiff focused on an alternative basis for her Title IX claim. Plaintiff claimed that Defendant Cornell violated Title IX when JA Grant, acting as a university officer, solicited Defendant Greenwood to pursue his harassment claim against Plaintiff. Referring to her proposed amended complaint, Plaintiff cited the emails between Defendant Greenwood and JA Grant from December 2006 through April 2007 as the factual basis for her claim that Defendant Greenwood did not wish to pursue charges against Plaintiff but that JA Grant did wish to prosecute and that she pushed Defendant Greenwood to take action.

However, Plaintiff's alternative argument fares no better. Hers is an implausible reading of those communications. Realistically, it would appear that Defendant Greenwood expressed surprise at JA Grant's pursuit of this case because he had only made an inquiry regarding Plaintiff's conduct. JA Grant thought that Defendant Greenwood had made a formal complaint, a misunderstanding which she made clear to Defendant Greenwood in an April 17, 2007 email, *see* Complaint at ¶ 46, and explicitly clarified to Plaintiff in her May 4, 2007 email to Plaintiff, *see id*. at ¶ 47. The emails between JA Grant and Defendant Greenwood merely represent JA Grant's attempt to determine what, if any, action Defendant Greenwood wished to take against Plaintiff. Neither Plaintiff's complaint nor her proposed amended complaint allege any further facts beyond these emails. Consequently, Plaintiff has made no allegations that would indicate that Defendant Cornell's investigation of her was retaliatory.

Since Plaintiff has not alleged any facts that plausibly indicate either deliberate indifference or a gender bias on the part of Defendant Cornell, the Court grants Defendants' motion and dismiss Plaintiff's Title IX claim.

### *3. Supplemental jurisdiction*

A federal district court has the authority to hear state law claims that are

> so related to the claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . . The district courts may decline [to do so, however, where it] has dismissed all claims over which it has original jurisdiction[.]

28 U.S.C. § 1367(a), (c)(3).

In the usual course, where a court dismisses all federal claims before trial, it will dismiss the state claims as well. *See Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (citations omitted). "Dismissal of the pendent state law claims is not, however, 'absolutely mandatory' even where the federal claims have been dismissed before trial . . . ." *Id.* (quotation omitted); *see also Schiffman v. Epstein*, No. 04 Civ. 2661, 2009 WL 1787760, *7 (S.D.N.Y. June 23, 2009) (stating that "[t]his preference [for dismissal of remaining state claims] is not an inexorable command" (citing *Valencia ex rel. Franco* [*v. Lee*], 316 F.3d [299,] 306 [(2d Cir. 2003)])). Finally, the Supreme Court has explained that "[a] district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech. Inc. v. HIF Bio, Inc.*, --- U.S. ---, 129 S. Ct. 1862, 1866 (2009) (citing [28 U.S.C.] § 1367(c)) (other citations omitted).

In determining whether to retain jurisdiction pursuant to § 1367(c)(3), the court "balances the traditional 'values of judicial economy, convenience, fairness, and comity[.]'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting [*Carnegie-Mellon Univ. v.*] *Cohill*, 484 U.S. [343,] 350, 108 S. Ct. 614 [(1988)]). "[N]o single factor is dispositive," and the decision whether to retain jurisdiction over the state claims must be made "in light of the specific

circumstances of the case at bar." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citation omitted). Where the state-law claims arise out of the same facts as the federal-law claims and are without merit, federal courts have generally favored retaining jurisdiction in the interest of judicial economy. *See Sullivan v. Chappius*, 711 F. Supp. 2d 279, 286 (W.D.N.Y 2010).

In this case, the state and federal claims arise out of the same facts, and, as explained more fully below, Plaintiff's state-law claims are largely without merit. Accordingly, the Court will retain jurisdiction over Plaintiff's state-law claims.

### *4. Plaintiff's state-law claims*

New York Executive Law § 296(7) (the "Human Rights Law") provides that it is "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because . . . she has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(7). The Human Rights Law also states that "[i]t shall be an unlawful discriminatory practice for an education corporation or association . . . to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age, or marital status[.]" N.Y. Exec. Law § 296(4).

To establish a retaliation claim under the Human Rights Law, a plaintiff must demonstrate (1) that she engaged in protected activity; (2) that the defendant knew of that activity; (3) that she suffered an adverse educational decision; and (4) that a causal connection existed between the protected activity and the adverse decision. *Cf. Hill v. Children's Vill.*, 196 F. Supp. 2d 389, 400

(S.D.N.Y. 2002) (using analogous language in an employment context) (citations omitted). Regarding the causal connection, courts in New York State have found that, where there are non-retaliatory explanations for allegedly retaliatory actions, no violation of the Human Rights Law has occurred. *See Kamen v. Rosa*, 223 A.D.2d 433, 433-34 (1st Dep't 1996) (holding that fired employee was not retaliated against where employee had consistently poor job performance ratings and multiple unexplained absences).

Section 40-c of the New York State Civil Rights Law provides that "[n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability . . . be subjected to any discrimination in his or her civil rights, or to any harassment[.]"  N.Y. Civ. Rights Law § 40-c(2).  This statute is applicable to suits alleging retaliation. *See Iliano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 352-53 (E.D.N.Y. 2008).  Defendants who violate the human rights law are subject to the civil penalties of § 40-c; and, therefore, "'[f]acts sufficient to sustain a cause of action under [NYHRL] will support a cause of action under section 40-c of the Civil Rights Law.'" *Id*. at 353 (quoting [*Ganzy v. Allen Christian School*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998)]).  Where a plaintiff cannot support a claim under the Human Rights Law, the defendant will not be exposed to liability under § 40-c. *See Hart v. Sullivan*, 84 A.D.2d 865, 866 (3d Dep't 1981) (citations omitted).

In the instant matter, Plaintiff has not alleged facts sufficient to support a claim under the Human Rights Law.  Plaintiff has not alleged any facts that support a plausible causal connection between Defendant Cornell's investigation and prosecution of her and her complaint against Defendant Greenwood.  As previously noted, the emails between Defendant Greenwood and JA Grant do not demonstrate a retaliatory motive on the part of Defendant Cornell, nor does Defendant

-11-

Cornell's failure to respond to Plaintiff's email to President Skorton. Accordingly, the Court grants Defendants' motion to dismiss this claim.

As a consequence of Plaintiff's failed claim under the Human Rights Law, Defendants cannot be penalized under § 40-c of the Civil Rights Law. Accordingly, the Court grants Defendants' motion to dismiss this claim.

### B.      Plaintiff's motion to amend

Plaintiff seeks to amend her original complaint and argues that the Court should allow her to file an amended complaint because the initial complaint did not clearly identify and discuss Defendants' alleged Title IX violation. *See* Motion to Amend at 1. Under Federal Rule 15(a), once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). If the underlying facts or circumstances upon which the party seeking leave to amend relies may be a proper subject of relief, the court should afford the party an opportunity to test the claim on its merits. *See United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989).

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

In this case, although Plaintiff did not comply with Local Rule 7.1(a)(4)'s requirement that

she "set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means[,]"  L.R. 7.1(a)(4), the Court has reviewed her proposed amended pleading in its entirety.  Having done so, the Court concludes that amendment would be futile because Plaintiff has not alleged sufficient facts in her proposed amended complaint to make out plausible claims under Title IX, the Human Rights Law or the Civil Rights Law.  Accordingly, the Court denies Plaintiff's motion to amend her complaint.[1]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to amend her complaint is **DENIED**; and the Court further

**ORDERS** that Arthur Z. Schwartz, Esq's. motion to withdraw as Plaintiff's counsel is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall, in addition to serving counsel, serve a copy of

---

[1] The Court also notes that, in light of Plaintiff's multiple requests for extensions of time in which to respond to Defendants' motion to dismiss and the ever-changing status of her relationship with her attorney, *see* Dkt. Nos. 8, 9, 11, 16, 17, 30-32, it seems likely that Plaintiff's motion to amend her complaint is a delaying tactic, which would result in undue delay and prejudice to Defendants.

this Memorandum-Decision and Order on Plaintiff, by certified mail, return receipt requested, at the following address:

>734 Wilcox Road
>West Edmeston, New York 13485.

**IT IS SO ORDERED.**

Dated July 1, 2011
Syracuse, New York

                                  Frederick J. Scullin, Jr.
                                  Senior United States District Court Judge